**THOMPSON v. ST. MARTINVILLE INV. CO., Inc., et al.***

No. 1662.

Court of Appeal of Louisiana. First Circuit.

Jan. 12, 1937.

Chas. J. Mundy, of New Orleans, for appellant.

Voorhies & Broussard, of St. Martinville, for appellees.

*Rehearing denied March 5, 1937.

OTT, Judge.

The plaintiff sues to recover of the defendant, St. Martinville Investment Co., Inc., and P. S. Daspit, doing business as the City Chevrolet Company, damages in the sum of $1,462. She alleges in her petition that on January 19, 1931, she executed a chattel mortgage in favor of said Daspit, doing business as the City Chevrolet Company, for the sum of $570 on one Chevrolet automobile, to secure the balance of the purchase price of said automobile, the said amount being payable in installments of $32 each, except the last installment which was for $26, payable monthly, beginning with the first installment due February 20, 1931; that the defendant, Daspit, on the 28th day of September, 1931, in company with another man, came to her home and by force and violence, and against her will, took possession of said automobile and drove it off, notwithstanding plaintiff had not defaulted in her payments; that the said defendant used what is known as "frontier process" in getting possession of said car.

She further avers that the other defendant, the St. Martinville Investment Co., Inc., which she is informed is the same as the said Daspit, or at least is under his control, instituted foreclosure proceedings on said chattel mortgage on October 6, 1931, and had said car sold at sheriff sale on October 31; that at the time of the seizure of said car under said executory proceedings, she was not in default on said installments, but, on the contrary, had overpaid same in the amount of $6. Her damages are made up of $462 which she claims to have paid on the said car, and the additional sum of $1,000 as damages for the illegal entry and trespass upon her premises and the forcible and illegal taking of said car.

After several exceptions had been filed and overruled, defendants answered denying ·the forcible and illegal taking of the car; denying that all installments had been paid when the executory process was instituted, but alleging, on the contrary, that defendant then owed one full installment and $2 on another; and further denied that defendants were the same company or person, but averred that they were each separate and distinct, and that the defendant, St. Martinville Investment Co., Inc., as the holder and owner of said chattel mortgage foreclosed same in regular and

legal form after default had been made in the payments as set forth therein.

All exceptions were overruled, and as these exceptions are not urged on appeal, they will be considered as abandoned.

Judgment was rendered by the trial court rejecting the demands of plaintiff, from which judgment she has appealed.

Defendants, appellees, have filed in this court a motion to dismiss the appeal on the ground that no citation of appeal has been served on appellees as required by law. No mention is made of this motion in the briefs filed in this court by counsel for appellees, and we assume that there is no intention to press the motion. In any event, the motion is without merit, as we find that a citation was served on defendants together with a copy of the petition and order of appeal. While the citation is irregular, as it requires defendants to appear in the district court of St. Martin parish within ten days to answer the petition, yet, the petition and order thereon, served on defendants, show the granting of the appeal and the return day thereof. Furthermore, plaintiff and appellant prayed for the citation of defendants, and if there was any irregularity in the citation it cannot be imputed to appellant.

Defendants and appellees have also filed a motion in this court to remand the case for the purpose of completing the record, by filing therein the reasons for judgment given by the trial judge, which reasons are not in the record.

The minutes show that the trial judge in rendering judgment reserved the right to file written reasons. Neither the record nor the motion shows that these reasons were ever filed. In any event, while we would like to have the benefit of the reasons assigned by the learned trial judge, if any were filed, yet we feel that the case can be decided without these reasons, even though mostly questions of fact are involved and even though we usually find the reasons given by the trial judge helpful and sometimes convincing. For these reasons both the motion to dismiss and the motion to remand are hereby overruled.

The first question of fact presented for decision is whether or not defendant, Daspit, took the car from plaintiff by force and against her will. The plaintiff testified that Daspit and Mr. E. A. Guirard came to her home about 7 o'clock on the morning of September 28, 1931, and Daspit told her if she did not pay $84 he would take the car; that she told him that she had her receipts and offered to show them to him, but that Daspit went to her garage and with the help of Guirard pushed the car out and took it off, during which time she was crying and protesting against the removal of the car. She then took her receipts to a neighbor, who sent her to a lawyer. After consulting several lawyers, she was unable to get any action to recover the car or stop the sale under the executory process.

Four children of plaintiff testified who claimed that they were present when the car was removed by Daspit and his companion, and their testimony corroborates, in the main, the testimony of the plaintiff as to how the car was taken away. These four children say that they were in the house just getting up, and their mother was in the back, when Daspit and Guirard came to the house and asked plaintiff if she had plenty of money; that unless she paid them $84 they would take the car; that plaintiff then asked Daspit if he had his books or receipts, but Daspit paid no attention to her request, but he and Guirard went to the garage and pushed out the car over the protest of plaintiff. They say that plaintiff was crying and holding on to the wheel trying to keep the two men from taking the car off. Another man, Herbert Deronen, testified that he was passing along the road in front of plaintiff's house, and saw two men pushing a car and plaintiff was holding onto the car, crying, and trying to prevent them from taking the car.

The version of Daspit and Guirard as to how they got possession of the car is quite different. Daspit says that they went to plaintiff's home to collect the past-due installments; that plaintiff invited them in and told them of an accident she had while on a trip to Texas in which the car had been damaged; that she suggested that they take the car and have it repaired and hold it until she could pay her installments; that she expected to sell a horse soon and would be able to pay up her installments; that she assisted them in pushing the car out in order to start it as the battery was down. Other than a few differences in detail, the testimony of Guirard on this point is similar to that of Daspit.

We thus have two entirely different versions of the manner in which Daspit secured possession of the car. It is manifest

that if plaintiff and her witnesses have given the correct facts on this point, the defendant, Daspit, is liable for an illegal trespass. If the facts are correctly given by Daspit and Guirard, then there is no basis for damages on this phase of the case. We find some grounds tending to strengthen the version given by both sides.

As to the testimony of plaintiff and her children, it seems that they are corroborated in at least one particular by the defense witness, Guirard, who says that plaintiff was crying. Of course, she could have been crying because she was about to lose her car because of her inability to meet the payments, but, at the same time, it is reasonable to assume that she was crying because her car was being taken away from her against her will. Again it seems strange, if Daspit took the car with her consent and with the purpose of repairing and holding it until she could make her payments, that foreclosure proceedings should have been begun just a little over a week after Daspit had secured possession of the car. The explanation of defendants on this point is that the Investment Company held the note and it was at the instance of the directors of that company that the foreclosure was begun for the reason, as assigned by this company, that the account was in a deplorable condition, and because plaintiff had taken the car to Texas and damaged it in a wreck.

On the other hand, it is rather significant that plaintiff made a payment of $10 on the car the very next day after she claims it was illegally taken from her. True, she could have thought that she would be given back the car when she caught up her payments. As far as the record shows she did not complain to the men whom she consulted soon after the car was taken from her that it had been taken from her by force. Nor does it seem reasonable that her children, some of whom were about grown, would have stood by and let these two men take their mother's car out of her possession without even coming out of the house to make a protest themselves.

The trial judge, who had the opportunity of seeing and perhaps of knowing the witnesses must have believed that the car was not taken from plaintiff against her will. We see no manifest error in his finding on this point.

On the other ground of damage to the effect that the car was seized and sold under executory process when there was no default in the payments, it is obvious that the holder of the note had a right to foreclose on October 6, 1931, if any amount whatever was then due. We find from the receipts offered by plaintiff she had paid up to that time the total sum of $222. There were then due eight installments of $32 each, or a total of $256. This left a balance due at the time of the foreclosure of $34.

Plaintiff is relying on two circumstances to prove that she did not owe this balance when the foreclosure was begun. The first is that in the petition for foreclosure, the Investment Company made the allegation that payments of $32 each had been made during the months of February, March, April, May, June, and July and a payment of $30 on August 20, 1931. As the plaintiff has receipts showing payments totaling some $45 after August 20th, it is contended that this defendant by its own pleadings shows that there was no default when the foreclosure was begun. However, we construe these allegations in the petition to mean, as explained by a defense witness, that a sufficient amount had been paid up to that time to cover the installments due for these six months and $30 on the payment due August 20th.

This corresponds with the total amount paid as shown by the receipts.

Then plaintiff claims that she paid $32 in February for which she was not given any receipt. To support this contention she produces a receipt for $32 signed by Daspit on March 28, 1931, on which is marked "installment second." Daspit explains that he wrote this receipt in a hurry and did not undertake to look the matter up but just assumed that it was the second installment. Plaintiff claims to have made the payment to Daspit's secretary at his office about the noon hour, and this girl did not write a receipt, as she was in a hurry to go out to lunch with a young man. The secretary denies as a witness that plaintiff ever paid her any money for Daspit for which no receipt was given.

It is also significant that during all the time that plaintiff was having her receipts examined by various persons after the controversy arose she did not mention the fact that she had made a payment for which no receipt had been given. She told one of the attorneys whom she employed that she had another receipt when this attorney found that she was short one installment. She never produced the receipt nor did she

tell him of making a payment without getting a receipt.

The preponderance of the evidence shows that the plaintiff was in default when executory process issued on the chattel mortgage.

For the reasons assigned, the judgment is affirmed at the cost of appellant.